1 | Vanessa R. Waldref
2 | United States Attorney
| Eastern District of Washington
3 | Patrick J. Cashman
4 | Assistant United States Attorney
| Post Office Box 1494
5 | Spokane, WA 99210-1494
6 | Telephone:  (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL 18 2023

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No.: 2:22-CR-00085-TOR-1 |
| Plaintiff, | Fed. R. Crim. P. 11(c)(1)(C) Plea Agreement |
| v. | |
| RONALD WALTER HANNES, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Ronald Walter Hannes ("Defendant"), both individually and by and through Defendant's counsel, Philip J. Wetzel, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 10 of the Indictment filed on July 19, 2022, which charges Defendant with Investment Advisor Fraud, in violation of 15 U.S.C. §§ 80b-6, 80b-17, a Class D felony.

Defendant understands that the following potential penalties apply:

a.    a term of imprisonment of not more than 5 years;

b.    a term of supervised release of 3 years;

PLEA AGREEMENT - 1

1          c.     a fine of up to $250,000, or not more than the grater of twice

2                 the gross gain or twice the gross loss;

3          d.     restitution; and

4          e.     a $100 special penalty assessment.

2.    Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

      a.     5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

      b.     3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

      c.     2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

      a.     sentencing is a matter solely within the discretion of the Court;

PLEA AGREEMENT - 2

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    the Court may reject the terms of the Fed. R. Crim. P. 11(c)(1)(C) plea agreement. However, if the Court rejects the terms of the plea agreement, Defendant or the United States may exercise the right to withdraw from the plea agreement as detailed *infra*.

4.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

1   Defendant affirms that Defendant is knowingly, intelligently, and voluntarily

2   pleading guilty as set forth in this Plea Agreement, regardless of any immigration

3   consequences that Defendant's guilty plea may entail.

4       5.    <u>Waiver of Constitutional Rights</u>

5   Defendant understands that by entering this guilty plea, Defendant is

6   knowingly and voluntarily waiving certain constitutional rights, including the

7   following:

8       a.    the right to a jury trial;

9       b.    the right to see, hear and question the witnesses;

10      c.    the right to remain silent at trial;

11      d.    the right to testify at trial; and

12      e.    the right to compel witnesses to testify.

13  While Defendant is waiving certain constitutional rights, Defendant

14  understands that Defendant retains the right to be assisted by an attorney through

15  the sentencing proceedings in this case and any direct appeal of Defendant's

16  conviction and sentence, and that an attorney will be appointed at no cost if

17  Defendant cannot afford to hire an attorney.

18  Defendant understands and agrees that any defense motions currently

19  pending before the Court are mooted by this Plea Agreement, and Defendant

20  expressly waives Defendant's right to bring any additional pretrial motions.

21      6.    <u>Elements of the Offense</u>

22  The United States and Defendant agree that in order to convict Defendant of

23  Investment Advisor Fraud, in violation of 15 U.S.C. §§ 80b-6, 80b-17, the United

24  States would have to prove the following beyond a reasonable doubt.

25      a.    *First*, beginning on a date unknown but by on or about July 19,

26      2017, and continuing through on or about November 27, 2019,

27      within the Eastern District of Washington, Defendant was an

28      investment advisor as defined in 15 U.S.C. § 80b-2(a)(11) who

PLEA AGREEMENT - 4

1    employed a device, scheme, or artifice to defraud a client or

2    prospective client, engaged in a transaction, practice, or course

3    of business which operated as a fraud or deceit upon a client or

4    prospective client, or engaged in an act, practice, or course of

5    business which was fraudulent, deceptive, or manipulative;

6    b.    *Second*, the crime involved the use of the mails or any means or

7    instrumentality of interstate commerce; and

8    c.    *Third*, Defendant did so knowingly and willfully.

9    7.    <u>Factual Basis and Statement of Facts</u>

10    The United States and Defendant stipulate and agree to the following: the

11    facts set forth below are accurate; the United States could prove these facts beyond

12    a reasonable doubt at trial; and these facts constitute an adequate factual basis for

13    Defendant's guilty plea.

14    The United States and Defendant agree that this statement of facts does not

15    preclude either party from presenting and arguing, for sentencing purposes,

16    additional facts that are relevant to the Sentencing Guidelines computation or

17    sentencing, unless otherwise prohibited in this Plea Agreement.

18    The Defendant, Ronald Walter Hannes, was previously the owner and

19    operator of, and doing business as, Hannes Financial Services, Inc ("HFS").  As

20    the owner and operator of HFS, the Defendant was a financial/investment advisor

21    as defined in 15 U.S.C.  § 80b-2(a)(11).  Through HFS, the Defendant provided

22    brokerage services to clients under the authority of Woodbury Financial Services.

23    In December 2019, following complaints from a client of the Defendant,

24    Woodbury Financial Services terminated the Defendant's employment and

25    brokerage relationship. Subsequently in February 2020, the Financial Industry

26    Regulatory Authority (FINRA) barred the Defendant from acting as a broker or

27    otherwise associating with a broker-dealer firm. The Federal Bureau of

28

PLEA AGREEMENT - 5

1  Investigation began an investigation into the Defendant after receiving information
2  from the Washington State Department of Financial Institutions.

3      The Defendant engaged in a scheme to defraud at least twenty-one investors
4  ("Victims").  The Victims were previous clients of the Defendant with established
5  legitimate investment accounts managed by the Defendant on behalf of Woodbury
6  Financial Services.  The Defendant engaged and persuaded the Victims to invest in
7  separate "high rate, tax-free" bond investments he described as "like a bond or like
8  a UIT."  The Defendant convinced the Victims to write checks to HFS, and other
9  entities at Defendant's request, to invest in the bonds.  In the normal course of
10 business, the Victims would provide checks or money transfers for investments
11 through the Defendant paid to the order of Woodbury Financial Services.
12 However, the payment for these bonds was made directly to the HFS, or directly to
13 third-party companies (ex. Bank of America, Diners' Club of America).  During
14 the scheme, the Defendant encouraged clients to "roll-over" their "investments"
15 once the bonds purportedly matured, and in fact paid some investors upon their
16 request.  The investigation revealed there were no bonds or securities attached to
17 these investments.  When a Victim client demanded the return of their funds or
18 chose not to "re-invest," the Defendant would provide a pay out to those
19 individuals.

20     During the investigation, the FBI learned from some victims the Defendant
21 stated he had pre-purchased the bonds and that their money was reimbursing him
22 for the bonds that he purchased in advance on their behalf.  Additionally, during
23 the investigation, investigators learned the Defendant would meet with the Victims
24 or provide them documents that indicated their initial investment amounts and the
25 amount of money they would make at maturity if they re-invested or requested full
26 redemption.

27     The investigation determined there were numerous accounts maintained and
28 operated by the Defendant where he would receive payment.  A forensic audit

PLEA AGREEMENT - 6

1  conducted during this investigation showed between April 2012 and March 2020,
2  approximately 288 checks were written from various investors to HFS, or entities
3  associated with the Defendant.

4      As part of the Defendant's scheme to defraud the Victims, the Defendant
5  solicited and deposited the following checks, all of which involved the use of the
6  mails or any means or instrumentality of interstate commerce:

| Check | Deposit Date | Description |
|-------|--------------|-------------|
| 1 | 9/4/2018 | Check #2290, dated 8/29/2018, in the amount of $4,137.34, authorized on the account of J.C., paid to the order of Hannes Financial Services, Inc. and deposited into First Interstate Bank Account ending 0234 resulting in an interstate wire communication from Washington to Iowa. |
| 2 | 9/17/2018 | Check #1278, dated 9/13/2018, in the amount of $9,837.00, authorized on the account of J.G., paid to the order of Hannes Financial Services, Inc. and deposited into First Interstate Bank Account ending 0234 resulting in an interstate wire communication from Washington to Iowa. |
| 3 | 10/1/2018 | Check #8279, dated 10/1/2018, in the amount of $8,169.30, authorized on the account of C.B., paid to the order of Hannes Financial Services, Inc., and deposited into First Interstate Bank Account ending 0234 resulting in an interstate wire communication from Washington to Iowa. |
| 4 | 1/17/2019 | Check #8565, dated 1/16/2019, in the amount of $9,947.40, authorized on the account of P.M. and P.M., |

| | | |
|---|---|---|
| | | paid to the order of Hannes Financial Services, Inc. and deposited into First Interstate Bank Account ending 0234 resulting in an interstate wire communication from Washington to Iowa. |
| 5 | 3/13/2019 | Check #5240, dated 3/8/2019, in the amount of $8,802.68, authorized on the account of R.G., paid to the order of Hannes Financial Services, Inc. and deposited into First Interstate Bank Account ending 0234 resulting in an interstate wire communication from Washington to Iowa. |
| 6 | 6/13/2019 | Check # 9296, dated 6/11/2019, in the amount of $17,837.50, authorized on the account of S.D., paid to the order of Hannes Financial Services, Inc. and deposited into First Interstate Bank Account ending 0234 resulting in an interstate wire communication from Washington to Iowa. |
| 7 | 9/19/2019 | Check #2064, dated 9/18/2019, in the amount of $9,112.50, authorized on the account of M.H., paid to the order of Hannes Financial Services, Inc. and deposited into First Interstate Bank Account ending 0234 resulting in an interstate wire communication from Washington to Iowa. |
| 8 | 10/21/2019 | Check #1677, dated 10/18/2019, in the amount of $5,179.47, authorized on the account of C.D., paid to the order of Hannes Financial Services, Inc. and deposited into First Interstate Bank Account ending 0234 resulting in an interstate wire communication from Washington to Iowa. |

PLEA AGREEMENT - 8

| 9 | 6/5/2019 | Check #6490, dated 6/5/2019, in the amount of $4,081.74, authorized on the account of E.M., paid to Hannes Financial Services, Inc., mailed from the State of Arizona, which envelop was addressed to the Defendant, d/b/a Hannes Financial Services, Inc., located in Spokane, Washington. |
|---|----------|---|

On December 10, 2021, an FBI Special Agent conducted a non-custodial interview of the Defendant at his residence. During this interview, the Defendant claimed a small portion of his investors qualified for investment in the growth of his company, HFS. However, contrary to the Defendant's statement, the Victims were not advised they were investing in HFS, nor would they have invested with the Defendant had they been advised the investments were for the growth of HFS.

8.   The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the following counts contained within the Indictment filed on July 19, 2022:

- Counts 1 through 8, Wire Fraud, in violation of 18 U.S.C. § 1343; and
- Count 9, Mail Fraud, in violation of 18 U.S.C. § 1341.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.   United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine

PLEA AGREEMENT - 9

1  Defendant's advisory range at the time of sentencing, pursuant to the Guidelines.

2  The United States and Defendant agree to the following Guidelines calculations.

3           a.    <u>Base Offense Level</u>

4        The United States and the Defendant agree that the base offense level for

5  Investment Advisor Fraud, in violation of 15 U.S.C. §§ 80b-6, 80b-17 is 6.

6  U.S.S.G. § 2B1.1(a)(2).

7           b.    <u>Special Offense Characteristics</u>

8        The United States and the Defendant agree that Defendant's base offense

9  level is increased by 16 levels because the actual loss, or intended loss, was not

10  less than $1,500,000 but not greater than $3,500,000. U.S.S.G. § 2B1.1(b)(1)(I).

11        The United States and the Defendant further agree the Defendant's base

12  offense level is increased by 2 levels because the offense involved ten or more

13  victims. U.S.S.G. §2B1.1(b)(2)(A)(i).

14        The United States and the Defendant further agree the Defendant's base

15  offense level is increased by 4 levels because the offense involved a violation of

16  securities law and the Defendant was an investment adviser. U.S.S.G. §

17  2B1.1(b)(20)(A)(iii).

18        The parties reserve the right to argue for or against the application of any

19  other specific offense characteristics, including any recommended by the United

20  States Probation Office.

21           c.    <u>Acceptance of Responsibility</u>

22        The United States will recommend that Defendant receive a downward

23  adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if

24  Defendant does the following:

25                 i.      accepts this Plea Agreement;

26                 ii.      enters a guilty plea at the first Court hearing that takes

27                              place after the United States offers this Plea Agreement;

28

PLEA AGREEMENT - 10

iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv.    provides complete and accurate information during the sentencing process; and

v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    d.    <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments according to the Fed. R. Crim. P. 11(c)(1)(C) plea agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

    e.    <u>Criminal History</u>

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10.    <u>Incarceration</u>

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate

PLEA AGREEMENT - 11

1  disposition of the case is between no term of imprisonment and 41 months in
2  custody, to be followed by a 3-year term of Supervised Release. The United States
3  and Defendant agree to make those sentencing recommendations to the Court.
4  Although the United States and Defendant agree to make these recommendations
5  to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no
6  promises of any type have been made to Defendant with respect to the sentence the
7  Court will ultimately impose. The United States further agrees not to oppose a
8  request for self-surrender at the direction of the United States Marshal's Service
9  and/or the Bureau of Prisons.

10      Defendant understands that Defendant may withdraw from this Plea
11  Agreement if the Court imposes a term of imprisonment of greater than 41 months
12  or indicates its intent to do so. Defendant also understands that the United States
13  may withdraw from this Plea Agreement if the Court imposes a term of
14  imprisonment of less than a 3-year term of supervised release, or indicates its
15  intent to do so.

16      The United States and Defendant acknowledge that the imposition of any
17  fine, restitution, or conditions of Supervised Release are not part of the Rule
18  11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant
19  are free to make any recommendations they deem appropriate as to the imposition
20  of restitution or conditions of Supervised Release; and that the Court will exercise
21  its discretion in this regard. The United States and Defendant acknowledge that
22  the Court's decisions regarding the imposition of fines, restitution, or conditions of
23  Supervised Release will not provide bases for Defendant to withdraw Defendant's
24  guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

25      Defendant acknowledges that if either the United States or Defendant
26  successfully withdraws from this Plea Agreement, the Plea Agreement becomes a
27  nullity, and the United States is no longer bound by any representations within it.
28

PLEA AGREEMENT - 12

11.    <u>Supervised Release</u>

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

c.    Defendant shall provide financial information, provide copies of Federal income tax returns and allow credit checks, at the direction of the Probation Officer.

d.    Defendant shall disclose all assets and liabilities to the Probation Officer and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the Probation Officer.

e.    Defendant shall be prohibited from incurring any new debt, opening new lines of credit, or entering any financial contracts or obligations without the prior approval of the Probation Officer.

PLEA AGREEMENT - 13

f.  Defendant shall participate and complete financial counseling and life skills programs at the direction of the Probation Officer.

g.  Defendant shall not have any contact with any victim identified in the charging instrument or discovery in the above-captioned matter.

12.  Criminal Fine

The United States and Defendant agree not to seek the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.  Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14.  Restitution

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

PLEA AGREEMENT - 14

1    a.    Restitution Amount and Interest

2    The United States and Defendant stipulate and agree that, pursuant to 18

3    U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in an amount

4    to be determined at sentencing, and that any interest on this restitution amount, if

5    any, should be waived.  The United States intends to present evidence at the time

6    of sentencing requesting a significant amount of restitution.

7    b.    Payments

8    To the extent restitution is ordered, the United States and Defendant agree

9    that the Court will set a restitution payment schedule based on Defendant's

10    financial circumstances.  18 U.S.C. § 3664(f)(2), (3)(A).  Regardless, Defendant

11    agrees to pay not less than 10% of Defendant's net monthly income towards

12    restitution.

13    The Defendant agrees to pay $50,000 towards restitution at the time of

14    sentencing.

15    c.    Treasury Offset Program and Collection

16    Defendant understands the Treasury Offset Program ("TOP") collects

17    delinquent debts owed to federal agencies.  If applicable, the TOP may take part or

18    all of Defendant's federal tax refund, federal retirement benefits, or other federal

19    benefits and apply these monies to Defendant's restitution obligations.  26 U.S.C.

20    § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

21    Defendant understands that the United States may, notwithstanding the

22    Court-imposed payment schedule, pursue other avenues to ensure the restitution

23    obligation is satisfied, including, but not limited to, garnishment of available funds,

24    wages, or assets.  18 U.S.C. §§ 3572, 3613, and 3664(m).

25    Nothing in this acknowledgment shall be construed to limit Defendant's

26    ability to assert any specifically identified exemptions as provided by law, except

27    as set forth in this Plea Agreement.

28    Until Defendant's fine and restitution obligations are paid in full, Defendant

PLEA AGREEMENT - 15

1   agrees fully to disclose all assets in which Defendant has any interest or over
2   which Defendant exercises control, directly or indirectly, including those held by a
3   spouse, nominee or third party.

4          Until Defendant's fine and restitution obligations are paid in full, Defendant
5   agrees to provide waivers, consents, or releases requested by the U.S. Attorney's
6   Office to access records to verify the financial information.

7                  d.    Obligations, Notifications and Waivers

8          Defendant agrees to truthfully complete the Financial Disclosure Statement
9   that will be provided by the earlier of 30 days from Defendant's signature on this
10  plea agreement or the date of the Defendant's entry of a guilty plea, sign it under
11  penalty of perjury and provide it to both the United States Attorney's Office and the
12  United States Probation Office.  The parties agree that Defendant's failure to timely
13  and accurately complete and sign the Financial Disclosure Statement, and any update
14  thereto, may, in addition to any other penalty or remedy, constitute Defendant's
15  failure to accept responsibility under U.S.S.G §3E1.1.

16         Defendant expressly authorizes the United States Attorney's Office to obtain
17  a credit report on Defendant upon the signing of this Plea Agreement. Until the fine
18  or restitution order is paid in full, Defendant agrees to provide waivers, consents or
19  releases requested by the United States Attorney's Office to access records to verify
20  the financial information.

21         Defendant agrees to notify the Financial Litigation Unit of the United States
22  Attorney's Office before Defendant transfers any interest in property with a value
23  exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant,
24  including any interest held or owned under any name, including trusts, partnerships
25  and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify
26  the Court and the United States Attorney's Office within a reasonable period of time,
27  but no later than 10 days, of any material change in Defendant's economic
28  circumstances that might affect defendant's ability to pay restitution, including, but

PLEA AGREEMENT - 16

1  not limited to, new or changed employment, increases in income, inheritances,
2  monetary gifts or any other acquisition of assets or money.

3       Until the fine or restitution order is paid in full, the Defendant agrees to
4  disclose all assets in which the Defendant has any interest or over which Defendant
5  exercises control, directly or indirectly, including those held by a spouse, nominee
6  or third party.

7       Pursuant to 18 U.S.C. § 3612(b)(F) the Defendant understands and agrees that
8  until a fine or restitution order is paid in full, the Defendant must notify the United
9  States Attorney's Office of any change in the mailing address or residence address
10  within 30 days of the change.

11       Defendant acknowledges that the Court's decision regarding restitution is
12  final and non-appealable; that is, even if Defendant is unhappy with the amount of
13  restitution ordered by the Court, that will not be a basis for Defendant to withdraw
14  Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's
15  conviction, sentence, or restitution order.

16       15.   Payments While Incarcerated

17       If Defendant lacks the financial resources to pay the monetary obligations
18  imposed by the Court, Defendant agrees to earn money toward these obligations by
19  participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

20       16.   Additional Violations of Law Can Void Plea Agreement

21       The United States and Defendant agree that the United States may, at its
22  option and upon written notice to the Defendant, withdraw from this Plea
23  Agreement or modify its sentencing recommendation if, prior to the imposition of
24  sentence, Defendant is charged with or convicted of any criminal offense or tests
25  positive for any controlled substance.

26       17.   Waiver of Appeal Rights

27       In return for the concessions that the United States has made in this Plea
28  Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's

PLEA AGREEMENT - 17

1  conviction and sentence if the Court imposes a term of imprisonment consistent
2  with the terms of this Rule 11(c)(1)(C) Plea Agreement.

3      If the Court indicates its intent to impose a sentence above the Rule
4  11(c)(1)(C) terms of this Agreement and Defendant chooses *not* to withdraw, then
5  Defendant: (a) may appeal only Defendant's sentence, but not Defendant's
6  conviction; (b) may appeal Defendant's sentence only if it exceeds the high end of
7  the Guidelines range determined by the Court; and (c) may appeal only the
8  substantive reasonableness of Defendant's sentence.

9      Defendant expressly waives Defendant's right to appeal any fine, term of
10  supervised release, or restitution order imposed by the Court.

11      Defendant expressly waives the right to file any post-conviction motion
12  attacking Defendant's conviction and sentence, including a motion pursuant to 28
13  U.S.C. § 2255, except one based on ineffective assistance of counsel arising from
14  information not now known by Defendant and which, in the exercise of due
15  diligence, Defendant could not know by the time the Court imposes sentence.

16      Nothing in this Plea Agreement shall preclude the United States from
17  opposing any post-conviction motion for a reduction of sentence or other attack
18  upon the conviction or sentence, including, but not limited to, writ of habeas
19  corpus proceedings brought pursuant to 28 U.S.C. § 2255.

20      18.    Withdrawal or Vacatur of Defendant's Plea

21      Should Defendant successfully move to withdraw from this Plea Agreement
22  or should Defendant's conviction be set aside, vacated, reversed, or dismissed
23  under any circumstance, then:

24          a.    this Plea Agreement shall become null and void;
25          b.    the United States may prosecute Defendant on all available
26                charges;
27          c.    The United States may reinstate any counts that have been
28                dismissed, have been superseded by the filing of another

PLEA AGREEMENT - 18

1                       charging instrument, or were not charged because of this Plea

2                       Agreement; and

3           d.      the United States may file any new charges that would

4                       otherwise be barred by this Plea Agreement.

5       The decision to pursue any or all of these options is solely in the discretion

6 of the United States Attorney's Office.

7       Defendant agrees to waive any objections, motions, and/or defenses

8 Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

9 charges if a count of conviction is withdrawn, set aside, vacated, reversed, or

10 dismissed, including any claim that the United States has violated Double

11 Jeopardy.

12       Defendant agrees not to raise any objections based on the passage of time,

13 including but not limited to, alleged violations of any statutes of limitation or any

14 objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

15 Amendment.

16       19.    Waiver of Attorney Fees and Costs

17       Defendant agrees to waive all rights Defendant may have under the "Hyde

18 Amendment," Section 617, P.L. 105- 119 (Nov. 26, 1997), to recover attorneys'

19 fees or other litigation expenses in connection with the investigation and

20 prosecution of all charges in the above-captioned matter and of any related

21 allegations (including, without limitation, any charges to be dismissed pursuant to

22 this Plea Agreement or any charges previously dismissed or not brought as a result

23 of this Plea Agreement).

24       20.    Integration Clause

25       The United States and Defendant acknowledge that this document

26 constitutes the entire Plea Agreement between the United States and Defendant,

27 and no other promises, agreements, or conditions exist between the United States

28 and Defendant concerning the resolution of the case.

PLEA AGREEMENT - 19

1      This Plea Agreement is binding only on the United States Attorney's Office

2   for the Eastern District of Washington, and cannot bind other federal, state, or local

3   authorities.

4      The United States and Defendant agree that this Agreement cannot be

5   modified except in a writing that is signed by the United States and Defendant.

6                    Approvals and Signatures

7      Agreed and submitted on behalf of the United States Attorney's Office for

8   the Eastern District of Washington.

9   Vanessa R. Waldref
United States Attorney
10

11

12   _____          7 - 17 - 2023
Patrick J. Cashman                   Date
13   Assistant United States Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT - 20

1       I have read this Plea Agreement and I have carefully reviewed and discussed

2  every part of this Plea Agreement with my attorney.  I understand the terms of this

3  Plea Agreement.  I enter into this Plea Agreement knowingly, intelligently, and

4  voluntarily.  I have consulted with my attorney about my rights, I understand those

5  rights, and I am satisfied with the representation of my attorney in this case.  No

6  other promises or inducements have been made to me, other than those contained

7  in this Plea Agreement.  No one has threatened or forced me in any way to enter

8  into this Plea Agreement.  I agree to plead guilty because I am guilty.

9

10

11  Ronald Walter Hannes          7-18-2023

12  Defendant                       Date

13       I have read the Plea Agreement and have discussed the contents of the

14  agreement with my client. The Plea Agreement accurately and completely sets

15  forth the entirety of the agreement between the parties.  I concur in my client's

16  decision to plead guilty as set forth in the Plea Agreement.  There is no legal

17  reason why the Court should not accept Defendant's guilty plea.

18

19  Philip J. Wetzel           7/18/2023

20  Attorney for Defendant         Date

21

22

23

24

25

26

27

28