Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>  v.<br><br>RONALD WALTER HANNES,<br><br>              Defendant. | 2:22-CR-00085-TOR-1<br><br>United States' Sentencing Memorandum |

      Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, respectfully submits the following Sentencing Memorandum. The United States recommends the Court sentence the Defendant to a term of 41 months incarceration, followed by 3 years of supervised release. A sentence of 41 months incarceration is a reasonable sentence that is no greater than necessary to meet the interests of federal sentencing principles.

United States' Sentencing Memorandum - 1

I.   Background

The United States relies on the facts provided in the Plea Agreement and the United States Probation Office's ("USPO") Pre-Sentence Investigation Report ("PSIR") and Addendum. (ECF Nos. 34, 44, 45). In summary, the Defendant plead guilty to engaging in a scheme to defraud investors beginning on a date unknown but by July 19, 2017, and continuing until November 27, 2019. As a result of the Defendant's scheme, he enriched himself and his business, Hannes Financial Services ("HFS"), to the financial detriment of his investors. These investors were spread throughout the western parts of the United States but had a common thread, that being the Defendant. Some of the investors were friends of the Defendant, while some were referred to the Defendant by family and friends. All of them however, trusted the Defendant and were taken in by Defendant's lies and false promises. Additionally, the Defendant's representation with Woodbury Financial Brokerage firm, the investment firm with which the Defendant was associated while he engaged in the scheme, was terminated. As a result, Woodbury and Everest Insurance, were required to enter into several settlement agreements with many of the Defendant's investors to salvage their own reputations and protect their own legal interests, resulting in significant financial harm to Woodbury and Everest Insurance. Following both criminal and administrative investigations, the Defendant was subsequently barred from providing financial advising services with the Financial Industry Regulatory Authority ("FINRA"). In total, the Defendant's scheme to defraud resulted in the loss of over $3.0 million dollars.

The United States reserves the ability to present additional facts as necessary at the sentencing hearing to address any of the Court's concerns or rebut the Defendant's arguments.

//
//
//

United States' Sentencing Memorandum - 2

## II. Base Offense Level & Enhancements

The United States concurs with the USPO's calculation of a base offense level 6. ECF No. 44, ¶65. The United States further concurs the base offense level is increased by 16 levels because there was a loss of more than $1,500,000 but less than $3,500,000. *Id.*, ¶66. Additionally, the United States concurs the base offense level is further increased by six levels because the Defendant's offense involved ten or more victims and he was an investment adviser. *Id.*, ¶¶ 67, 68.

The United States concurs the Defendant's base offense level is reduced by five levels for acceptance of responsibility and because he lacks any criminal history. *Id.*, ¶¶ 73-75. Accordingly, the Defendant's adjusted offense level is a 23. *Id.*, ¶ 76. The United States further concurs the Defendant's Criminal History Category is a I. *Id.*, ¶148. Accordingly, the Defendant's advisory guideline range is properly calculated at 46 to 51 months. *Id.*

## III. Defendant's PSIR Objections

The Defendant has filed objections to the PSIR. The United States concurs with the USPO's response to the Defendant's objections as referenced in the USPO's PSIR Addendum. ECF No. 45.

## IV. Dismissals

At the conclusion of the sentencing hearing, the United States will move to dismiss Counts 1 through 8, which charge Wire Fraud in violation of 18 U.S.C. § 1343, and Count 9, which charges Mail Fraud, in violation of 18 U.S.C. § 1341.

## V. Departures

The United States recommends a downward variance of five months from the calculated advisory guideline range. The United States expects the Defendant may request a further downward departure. The United States maintains that a sentence less than 41 months is insufficient to meet the interests of justice, principles of federal sentencing, and the 18 U.S.C. § 3553(a) factors.

United States' Sentencing Memorandum - 3

## VI.    18 U.S.C. § 3553(a)

When applying the 18 U.S.C. § 3553(a) factors, a sentence of 41 months and three-years supervised release is appropriate. The United States submits, under the circumstances of this case, a 41-month sentence is fair and no greater than necessary to satisfy the interests of federal sentencing principles.

a.    Nature, Circumstances, and Seriousness of the Offense:

The acts of the Defendant in this case are serious and constitute a staggering breach of trust, not only as a fiduciary to his investors but as a trusted friend and acquaintance to many of them. The United States' recommended sentence of 41 months is fair and appropriately reflects the gravity of the Defendant's acts, and balances the egregiousness of Defendant's conduct while ensuring that the sentence is no greater than absolutely necessary under the circumstances. While this case is about financial crimes to which the victims suffered harm, as with many fraud cases, the impact of the Defendant's acts cut much deeper wounds than those to the victims' bank accounts. The Defendant exploited and abused his position of trust and investment expertise and sophistication to embezzle the life savings of his investors all for his personal benefit.

Notably, the victims that Defendant chose to exploit were not sophisticated hedge funds, trusts, or investment groups with the ability to protect themselves against losses through hedges and short positions; rather, they were hardworking individual members of the community, many of whom were retired, widowed, and/or elderly and with limited means of generating new income, who wanted to use their hard-earned savings to provide financial security from hard times for themselves and their loved ones. They put their trust in Defendant to help them do that, due to Defendant's knowledge and sophistication, his status as an investment advisor, his relationship with reputable and trusted financial firms, and his personal relationships with the victims. Defendant callously abused that trust, exploiting his status and those relationships for his personal well-being.

United States' Sentencing Memorandum - 4

A review of the many victim impact statements highlights the significance the Defendant's conduct had on his victims. Victims like Karen Price, whose parents were "very hard-working people…they didn't live in a fancy house or take expensive vacations because they wanted to save for retirement and healthcare expenses," trusted and invested with the Defendant, only to learn that their hard-earned and precious savings had been embezzled and stolen through lies and false promises. Ms. Price's father passed away "not knowing if his family would ever recoup the money [the Defendant] stole." ECF No. 44-1, pg. 1. Ms. Price continued by stating that because of the Defendant's acts, she has and forever will have trust issues. *Id.* The sentiments of Ms. Price are a common theme throughout each of the victim impact statements. Similar to Ms. Price, other victims described their savings for the future for medical emergencies and inheritances and to provide safety and financial security for their beloved family members all gone at the hands of the Defendant. This presents an ironic twist given the Defendant's statements regarding his own age and medical condition as a basis for a reduced sentence.

Additionally, the Morgenthalers similarly expressed the significance of the Defendant's acts and its emotional toll stating "[W]e trusted [the Defendant] with not only our financial assets but also our personal welfare. This betrayal has left us feeling violated, anxious, and deeply hurt." ECF No. 44-1, pg. 10. Ms. Debra Northrup also expressed equally significant sentiments, as did a number of the other victims.

The extent and seriousness of the Defendant's acts cannot not simply be summed up in a plea agreement or sentencing memorandum. The Defendant's misconduct has many layers that will have lasting consequences not only for him but for his victims. Therefore, the sentence the Court imposes should reflect those injuries, financial and emotional, imposed on the victims by the Defendant and punish him for the gravity of his actions. The United States submits a sentence of 41 months

United States' Sentencing Memorandum - 5

followed by three years of supervised release is the minimum sentence appropriate and necessary to meet this goal and achieve justice.

b. Characteristics and Criminal History of Defendant:

The Defendant is a Criminal History Category I. The Defendant has no criminal history. However, the Court is not presented with an individual of limited means or education. The Defendant is educated and trained in investing and financial wealth management. The Defendant is of sophisticated means and is well equipped to know his role and responsibilities as a financial advisor and his fiduciary duty to his investors. The Defendant willfully violated this trust to enrich himself. This willful violation of trust, regardless of his lack of criminal history, shows the character of the man before the Court and warrants a sentence of 41 months in federal prison.

Moreover, the Defendant does not appear to fully appreciate the magnitude of his actions or be genuinely remorseful. The Defendant, while acknowledging that he was wrong, appears to minimize the egregiousness of his conduct and the breach of trust that was placed in him by his clients. ECF No. 44, ¶61. The Defendant continues to portray a narrative that these investments were for his business and his misconduct was that he did not explain this clearly. *Id.* This is a substantial misstatement that is belied by the facts developed in this case, and borders on failure to meaningfully accept responsibility. As noted throughout this investigation, not one victim ever was advised they were investing in his business, presumably because had he advised such, they would not have invested with him. Rather, the Defendant developed a scheme where he portrayed the investments as high interest or tax-free bonds and sold these as sound and safe investments to clients he knew he could exploit. This goes directly to the character of the Defendant and whether he is genuinely remorseful for his conduct, as well as whether he has truly accepted responsibility for his crimes.

Accordingly, this factor supports a sentence of 41 months followed by three years of supervised release.

      c. Need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense:

A sentence of 41 months provides just punishment for the offense and will promote respect for the law.

      d. Need for the sentence imposed to afford adequate deterrence to criminal conduct:

Deterrence is particularly crucial in this case because the Defendant, a financial advisor, savvy in business and wealth management, willfully violated the trust of his clients by creating a fraudulent scheme that offered significant financial returns to the investors but was an absolute fiction. "Defendants in white collar [cases] often calculate the financial gain and risk of loss, and white-collar crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). It is exactly this mentality, a mentality that looks through the lens of a cost-benefit analysis to determine whether the bottom-line dollar figure is worth the risk of prison, should be amenable to deterrence. Accordingly, that message of deterrence is most effective in two ways against white collar criminals, a high risk of significant imprisonment and a high risk of loss of substantial amounts of personal wealth.

Absent such deterrence, other successful investment advisors with the means and opportunity to enrich themselves at the cost of their investors, will cynically conclude that the potential rewards of such criminal activity outweigh the risk of being caught and punished. Fraudsters will not only think that they can get away with it, but that even if they do get caught, sentencing will be lenient for them more so than for other federal defendants. A sentence of significant imprisonment promotes compliance with fiduciary duties by making clear that there are consequences for taking advantage of those who have entrusted their life savings with a third-party that claims to be acting in their best interests. The recommended sentence of 41 months

United States' Sentencing Memorandum - 7

will deter others and send a message that engaging in schemes to defraud bears very serious consequences, and simply will not be tolerated.

  e. Need for the sentence imposed to protect the public from further crimes of the Defendant:

  The Defendant has been barred from providing financial advice or wealth management. However, as a condition of supervised release, the Court should order the Defendant not be permitted to provide financial advisory services or wealth management services to ensure the public is not further victimized by the Defendant.

  f. Need for sentence imposed to provide the Defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner:

  The Defendant is a 74 year old male that is educated, trained, and previously was licensed to provided financial wealth management, thus a sentence of imprisonment would likely not provide effective educational or vocational training. However, the Defendant does have medical issues that can be sufficiently addressed and managed by the Bureau of Prisons.

  g. The kinds of sentences available:

  There are no alternative sentences available to the Defendant because of his offense level and criminal history category. The monetary costs of incarceration should not prevent the Defendant from serving the sentence he is due.

  h. The kinds of sentence and the sentence range established under the Guidelines:

  The United States, while in agreement with the USPO's guideline calculations of 46 to 57 months, submits a sentence of 41 months is sufficient to meet the interests of federal sentencing and the factors in 18 U.S.C. § 3553(a).

  i. Any pertinent policy statements issued by the Sentencing Commission:
  There are no pertinent policy statements in this case.

  j. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct:

The United States believes the recommended sentence of 41 months is appropriate to reflect the gravity of the Defendant's criminal acts when balanced against other similarly situated defendants.

  k. Need to provide restitution to any victims of the offense:

Restitution serves the purpose of making a victim whole by restoring to the victim the value of the losses suffered as a result of the Defendant's crimes. *See United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011). The United States recommends the total amount of restitution to be ordered in this case is $3,212,402.62. The restitution amount is not agreed to in this case, thus the Court will need to address this at sentencing or by setting a restitution hearing to occur within 90 days of the date of judgement.

Additionally, in determining the Defendant financial ability to pay restitution, the United States is aware the Defendant holds an equity stake in CRM&M Hawaiian Ventures, LLC. This LLC is owned by the Defendant and his wife Cara Hannes. The corporation appears to have a financial interest in five timeshares located in Maui, Hawaii, all of which continue to appear on the Defendant's credit report. In reviewing the PSIR, it does not appear the Defendant made the USPO aware of his ownership stake in the corporation.

## VI. Conclusion

Accordingly, the United States recommends the Court impose a sentence of 41 months imprisonment followed by 3 years of supervised release.

Dated: February 8, 2024.

                Vanessa R. Waldref
                United States Attorney

                *s/ Patrick J. Cashman*
                Patrick J. Cashman
                Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Philip Wetzel
phillipwetzel@gmail.com

*s/ Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney

United States' Sentencing Memorandum - 10